778 F.2d 1266
 121 L.R.R.M. (BNA) 2146
 PLUMBERS' PENSION FUND, LOCAL 130, U.A.; Plumbers' Welfare
Fund, Local 130, U.A.; the Trust Fund for Apprentice and
Journeyman Education and Training, Local 130, U.A.; the
Plumbing Council of Chicagoland; Plumbing Contractors
Association of Chicago and Cook County; and Edward F.
Brabec, not individually but as Business Manager of Chicago
Journeymen Plumbers' Local Union 130, U.A., Plaintiffs-Appellees,
v.
DOMAS MECHANICAL CONTRACTORS, INC., Defendant-Appellant.
 No. 84-2834.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 23, 1985.
Decided Dec. 10, 1985.
 
 James A. Graham, Glenn Seiden & Assoc., Chicago, Ill., for defendant-appellant.
 Paul V. Esposito, Lewis Overbeck & Furman, Chicago, Ill., for plaintiffs-appellees.
 Before POSNER and FLAUM, Circuit Judges, and SWYGERT, Senior Circuit Judge.
 FLAUM, Circuit Judge.
 
 
 1
 The plaintiffs, several union employee benefit funds, and the defendant employer are involved in a dispute under a collective bargaining agreement concerning the employer's obligation to contribute to the funds on behalf of certain employees. Pursuant to the collective bargaining agreement the dispute was submitted to a Joint Arbitration Board, which decided in favor of the plaintiffs. The plaintiffs subsequently filed suit in the district court seeking enforcement of the award. The district court granted summary judgment to the plaintiffs and the employer appeals. Because the employer did not challenge the award within the applicable statute of limitations, we affirm.
 
 I.
 
 2
 The defendant is an Illinois corporation doing business as a plumbing contractor. The company employs journeyman plumbers, for whom the Chicago Journeyman Plumbers' Union, Local 130, is the exclusive bargaining representative. The company also employs "shop help" workers to perform various non-plumbing tasks, including driving the plumbers to service calls and preparing and cleaning up the work sites. According to the company, these "shop help" employees are not permitted to engage in any of the job tasks set forth in the collective bargaining agreement between the company and the union.
 
 
 3
 The collective bargaining agreement provides, among other things, that the company must make contributions to certain employee benefit funds on behalf of those employees who perform the tasks set forth in the agreement and who therefore are covered by the agreement. The agreement also provides that "[d]isagreements or disputes and all interpretations of this Agreement shall be settled by arbitration," that "[t]he parties hereto agree that all disputes arising between them shall be submitted to the respective Joint Arbitration Boards," and that any decision of the Board will be "final and binding on the parties hereto."
 
 
 4
 In July, 1981, auditors advised plaintiffs that the company owed $27,255.28 plus late charges to the employee benefit funds for unpaid contributions on behalf of "shop help" employees. The plaintiffs referred the matter to the Joint Arbitration Board. After giving the company notice, the Board held a hearing at which the company and plaintiffs were represented. On December 19, 1983, the Board found that the company had violated the collective bargaining agreement by failing to make contributions on behalf of covered employees, and the Board issued an award to the plaintiffs totalling $27,387.65.
 
 
 5
 On April 16, 1984, the plaintiffs filed a complaint in the United States District Court for the Northern District of Illinois, seeking enforcement of the Board's award. The plaintiffs alleged, and the company admitted in its answer, that the company had failed to comply with the award and had made none of the required payments to any of the funds. Subsequently, the plaintiffs moved for summary judgment. The company responded by moving to dismiss the plaintiffs' motion for summary judgment on what it claimed was a jurisdictional ground: "[t]he controversy decided by the Joint Arbitration Board involved persons not parties to the Arbitration Agreement [sic]." The company also contended that the Board's inadequate notices had denied it due process.
 
 
 6
 On September 27, 1984, the district court granted summary judgment to the plaintiffs. In an accompanying Memorandum Opinion, the court noted that the company's "jurisdictional" defense in reality involved a dispute over whether the "shop help" employees were covered by the collective bargaining agreement, an issue that required interpretation of the agreement. Since the parties had agreed that all questions of interpretation would be referred to arbitration, the court concluded that the issue had been properly before the Joint Arbitration Board and that the court therefore had to enforce the award. The court further determined that the company had received adequate notice of the Board's hearing. Finally, the court awarded the plaintiffs their reasonable costs and attorneys' fees pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. Sec. 1132(g)(2) (1982).
 
 II.
 
 7
 Before this court, the company raises two arguments in support of its assertion that the district court's enforcement of the arbitration award should be overturned. First, the company claims that the Board's decision was not based on the collective bargaining agreement, but rather was arbitrary and capricious. Second, the company contends that the arbitration award violates public policy as embodied in several ERISA provisions. The plaintiffs respond by asserting that this court cannot review the merits of binding arbitration awards and that certain materials contained in the company's brief and appendix should be stricken because they are not in the record.
 
 
 8
 We decline to rule on any of these arguments. Instead, we hold that the company's failure to seek vacation of the arbitration award within the 90-day limitation period prescribed by the Illinois Arbitration Act, Ill.Ann.Stat. ch. 10, Sec. 112(b) (Smith-Hurd 1975), bars it from challenging the plaintiffs' enforcement of the award. This court previously has recognized that a "defendant's failure to move to vacate [an] arbitration award within the prescribed time period for such a motion precludes it from seeking affirmative relief in a subsequent action to enforce the award." Chauffeurs, Teamsters, Warehousemen and Helpers, Local Union No. 135 v. Jefferson Trucking Co., 628 F.2d 1023, 1025 (7th Cir.1980), cert. denied, 449 U.S. 1125, 101 S.Ct. 942, 67 L.Ed.2d 111 (1981). Since the company's defense to the award's enforcement involves an attack on the award's validity, an attack the company could have made in an action to vacate the award, this case falls within the Jefferson Trucking doctrine. The sole issue we must decide, therefore, is what statute of limitations to apply.
 
 
 9
 This enforcement action, like Jefferson Trucking, was brought under section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. Sec. 185. The LMRA provides no statute of limitations for actions challenging arbitration awards. Accordingly, the United States Supreme Court has held that, as a matter of federal law, timeliness under section 301 is to be determined "by reference to the appropriate state statute of limitations." UAW v. Hoosier Cardinal Corp., 383 U.S. 696, 704-05, 86 S.Ct. 1107, 1112-13, 16 L.Ed.2d 192 (1966). In Jefferson Trucking we decided that the Indiana version of the Uniform Arbitration Act, which contains a 90-day limitation period, applied. 628 F.2d at 1026-27. Similarly, we conclude here that the 90-day period in the Illinois version of the Uniform Arbitration Act is the appropriate statute of limitations.
 
 
 10
 During oral argument in this case, we raised a question not faced in Jefferson Trucking: whether this issue is controlled by the Supreme Court's holding in DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 2293, 76 L.Ed.2d 476 (1983). See Landgrebe Motor Transport v. District 72, International Association of Machinists, 763 F.2d 241, 244 n. 1 (7th Cir.1985) (scope of DelCostello unclear). The Court in DelCostello had ruled that the six-month limitation period embodied in section 10(b) of the NLRA is to be applied where an individual employee challenges an arbitration award by bringing a section 301/fair representation claim against his union and/or employer. The Court expressly narrowed the scope of its holding, however, by stressing that DelCostello "should not be taken as a departure from prior practice in borrowing limitations periods for federal causes of action, in labor law or elsewhere." Id. 103 S.Ct. at 2294. After examining the present case in light of the factors that persuaded the Court in DelCostello to apply the section 10(b) statute of limitations, we conclude that we should not depart here from the longstanding rule of borrowing the applicable state statute of limitations.
 
 
 11
 The Court identified two factors that accounted for its refusal in DelCostello to apply a state statute of limitations: "a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and ... the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking." Id. at 2294. Neither of these factors are present here.
 
 
 12
 First, the Illinois statute of limitations for seeking to vacate arbitration awards is directly analogous to the situation underlying the section 301 action here. The Illinois version of the Uniform Arbitration Act provides in section 101 that "[a] written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the revocation of any contract." Ill.Ann.Stat. ch. 10, Sec. 101 (Smith-Hurd 1975). In section 112(b) the statute states that "[a]n application [to vacate an arbitration award] under this Section shall be made within 90 days after delivery of a copy of the award to the applicant." Ill.Ann.Stat. ch. 10, Sec. 112(b) (Smith-Hurd 1975). The Act, therefore, clearly contemplates a scheme of private, contractual dispute resolution, with a very brief period for objection by the dissatisfied party followed by speedy judicial enforcement. This case presents the paradigm example of the situation for which the Illinois Act's statute of limitations was designed. The setting is commercial, and the underlying dispute involves the breach of a contract to which the litigants were parties. Moreover, the parties entered the arbitration arena pursuant to agreement, possess relatively equal bargaining power, and had an equal opportunity to present evidence and arguments to the Joint Arbitration Board. To either party the collective bargaining agreement is, in this respect, very similar to any of the commercial contracts they may have executed that contain arbitration clauses, and the Illinois Arbitration Act's 90-day limitation period therefore is closely analogous.[1]
 
 
 13
 In contrast, the employee-litigant's claim in DelCostello was far from analogous to the scheme contemplated by the Uniform Arbitration Act. Indeed, because employees are not parties to collective bargaining agreements, their section 301 suits amount to " 'a direct challenge to the private settlement of disputes under [the collective bargaining agreement.]' " 103 S.Ct. at 2291 (quoting United Parcel Service, Inc. v. Mitchell, 451 U.S. 56, 66, 101 S.Ct. 1559, 1565, 67 L.Ed.2d 732 (1981) (Stewart, J., concurring)) (emphasis added). Thus, their "hybrid Sec. 301/fair representation" claims have "no close analogy in ordinary state law," and the much more closely analogous six-month federal statute of limitations, which applies to unfair labor practice actions before the National Labor Relations Board, is to be substituted. Id. In short, a comparison of the employee suit present in DelCostello and the instant action convinces us that, while the state statute of limitations was not analogous to the DelCostello situation, the state 90-day limitation period is directly analogous here. Cf. Vallone v. Local Union No. 705, International Brotherhood of Teamsters, 755 F.2d 520, 521-22 (7th Cir.1985) (6-month limitation period of section 10(b) is analogous to employee's suit under Labor-Management Reporting and Disclosure Act).
 
 
 14
 The Court's second reason for refusing to apply a state statute of limitations in DelCostello --the presence of federal policies and practicalities of litigation that make the federal limitation period more appropriate--is similarly absent here. In DelCostello, the employee's right of action derived solely from the NLRA, which deprives employees of the ability to bargain individually with employers but imposes on unions a corresponding duty of fair representation. 103 S.Ct. at 2290 n. 4; see also, e.g., Vaca v. Sipes, 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967). In order for a court to grant an employee relief from the actions of one or both of the actual parties to the arbitration, therefore, the employee must claim and prove that the union did not fairly represent him. 103 S.Ct. at 2290-91. See also, e.g., Anderson and Moore v. Norfolk and Western Railway Co., 773 F.2d 880 (7th Cir.1985). The practicalities of this kind of suit mandate a longer statute of limitations than the 90-day period typically provided by the states. As the Court noted in DelCostello, "the employee will often be unsophisticated in collective-bargaining matters, ... [and will be] called upon, within the limitations period, to evaluate the adequacy of the union's representation, to retain counsel, to investigate substantial matters that were not at issue in the arbitration proceeding, and to frame his suit." Id. 103 S.Ct. at 2291. At the same time, however, the national interest in protecting consentual labor dispute resolution from delayed attack prompted the Court in another case, when forced to choose between 90-day and 6-year state statutes of limitations, to opt for the shorter period. United Parcel Service, Inc. v. Mitchell, 451 U.S. 56, 64, 101 S.Ct. 1559, 1564, 67 L.Ed.2d 732 (1981). DelCostello thus represents a recognition that the NLRA's six-month period, which was congressionally designed to accommodate the very balance of interests at stake in DelCostello, was more appropriate than any of the state alternatives. 103 S.Ct. at 2294. Compare United Brotherhood of Carpenters and Joiners of America, Local 1020 v. FMC Corp., 724 F.2d 815, 817-18 (9th Cir.1984) (in action by union against employer to vacate arbitration award, state 20-day limitation period is preferred to section 10(b)'s 6-month period) with Federation of Westinghouse Independent Salaried Unions v. Westinghouse Electric Corp., 736 F.2d 896, 902 (3d Cir.1984) (in union's action against employer to compel arbitration, section 10(b)'s 6-month limitation period is better suited to policies than state 6-year statute of limitations).
 
 
 15
 The peculiar litigation posture of DelCostello is not present here, however. As we discussed above, both parties to the district court enforcement action were also parties to the arbitration; both were able to present the merits of their respective positions to the Arbitration Board. We have no reason to conclude that either the employer or the union would be somehow less able in this labor setting than in any other commercial dispute to summon their arguments before the district court within ninety days of receipt of the arbitration decision.
 
 
 16
 Moreover, there appear to be no federal interests here similar to the special policies that created an avenue for employee intervention into the collective bargaining dispute resolution mechanism. Instead, we are compelled to give credence in this situation to the traditional presumption that Congress, having drawn the parameters of the collective bargaining scheme, was satisfied that national interests would be served by the application of state law to the interstices of that scheme.
 
 
 17
 In light of our conclusion that neither of the DelCostello factors are present here, we find that the 90-day statute of limitations embodied in the Illinois Arbitration Act governs the time period during which the company could attack the arbitration award. Since the company failed to do so until it filed its answer in the district court 138 days after receipt of the Arbitration Board's decision, we hold that its defenses are time-barred.[2] Accordingly, we affirm the district court's enforcement order.III.
 
 
 18
 Under the provision of ERISA mandating the award of attorney's fees to employee benefit funds who have successfully pursued enforcement actions, 29 U.S.C. Sec. 1132(g)(2)(D), the district court in this action awarded reasonable attorney's fees and costs to the plaintiffs. In light of the nondiscretionary nature of attorney's fees awards in this situation and the apparent intent of Congress to promote plan enforcement and protect employee funds from the expenses of enforcement litigation, we award plaintiffs their reasonable attorney's fees and costs incurred in this appeal. We direct plaintiffs to file within twenty-one days from the date of this judgment a verified petition of fees and costs.
 
 
 
 [1]
 The Illinois Arbitration Act provides:
 Nothing in this Section or any other Section of this Act shall apply to the vacating, modifying, or correcting of any award entered as a result of an arbitration agreement which is a part of or pursuant to a collective bargaining agreement; and the grounds for vacating, modifying, or correcting such an award shall be those which existed prior to the enactment of this Act.
 Ill.Ann.Stat. ch. 10, Sec. 112(e) (Smith-Hurd 1975). This language does not preclude the Act's application here. Our mission after Hoosier Cardinal is to select the most analogous state statute of limitations, and the Illinois legislature's apparent intent to preserve pre-Act federal timeliness provisions and grounds for vacating does not affect our conclusion that the Illinois 90-day limitation period is closely analogous to the situation here.
 
 
 [2]
 During oral argument, the company asserted that, even if the 90-day statute of limitations applied, it had tolled the statute by petitioning the National Labor Relations Board for a unit clarification. This argument is without merit, however, because the NLRB proceeding is collateral to the arbitration mechanism and did not involve the issues determined in arbitration--that is, that the company owed the funds past-due contributions on behalf of "shop help" employees for a certain period. See, e.g., Vallone, 755 F.2d at 522